Mitchell Lynn McDANIEL,
Petitioner–Respondent,

v.

Janette M. LOHMAN, Director,
Department of Revenue,
Respondent–Appellant.

No. 22451.

Missouri Court of Appeals,
Southern District,
Division Two.

May 5, 1999.

adduce substantial evidence that [Driver] operated a motor vehicle with an unlawful blood alcohol concentration where [Driver] contested those facts, the arresting officer failed to appear under subpoena, and no witness observed [Driver] in the act of operating a motor vehicle." In her sole point of error, Director maintains that despite the lack of in-court testimony of the arresting officer at trial, she made a *prima facie* case that Driver was arrested upon probable cause for violating an alcohol-related offense and that he had been driving a motor vehicle with a blood alcohol content in excess of .10% by weight.[2] We reverse and remand with directions to enter a judgment reinstating the suspension of Driver's driving privileges.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

No appearance by respondent.

ROBERT S. BARNEY, Judge.

The Director of Revenue ("Director") appeals the circuit court's judgment of June 10, 1998, restoring the driving privileges of Mitchell Lynn McDaniel ("Driver") after they had previously been suspended under the provisions of section 302.505.1.[1] In its judgment, the trial court ordered the Director to reinstate Driver's driving privileges on the basis that the "Director ha[d] failed to

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Kienzle v. Director of Revenue*, 944 S.W.2d 326, 327 (Mo.App.1997). In reviewing a revocation or suspension under section 302.505, the trial court must determine the following: (1) whether the driver was arrested upon probable cause for violating an alcohol-related offense; and (2) whether the driver had been driving with a blood alcohol content of at least .10% by weight. *Id.* Both of these elements must be proved by a preponderance of the evidence. *Tebow v. Director of Revenue*, 921 S.W.2d 110, 113 (Mo.App.1996).

The record before us primarily embodies certified copies of records of the Department of Revenue, received into evidence as business records, consisting of Driver's "traffic tickets, the alcohol influence report [containing an attached printout of a breath analysis indicating that at 5:38 p.m. on June 7, 1997 that driver's blood alcohol content was .189%], the maintenance report on the BAC Verifier, with attached printouts, a certificate of analysis and notice of suspension...."[3]

---

1. All statutory references are to RSMo Cum. Supp.1996, unless otherwise indicated.

2. Driver has filed no brief. "While there is no penalty prescribed for the failure to file a brief, we are required to decide the case without the benefit of that party's authorities and points of

view." *Fitzgerald v. Director of Revenue*, 922 S.W.2d 478, 479 n. 3 (Mo.App.1996).

3. The trial court overruled Driver's objection to the receipt into evidence of the alcohol influence report on the basis of improper notarization. Other than the date on the report, there was no evidence to suggest that the arresting officer had

The trial court also received a uniform accident report into evidence. The parties stipulated that the breath analysis machine had been maintained properly. It was further stipulated that if Driver were called to testify as to "whether he was driving the vehicle, whether he had anything to drink" he would refuse to answer on the grounds of his "privilege under the Fifth Amendment." Although subpoenaed by the Director as a witness, the arresting officer failed to appear. Driver presented no evidence.

■ In the alcohol influence report, the arresting officer described the incident that is the impetus for this case as follows:

> On 6–7–97 I was patroling (sic) when I was dispatched to an accident ... and the driver was possibly intoxicated. When I arrived I spoke to the owner of the parked car and then Mitchell L. McDaniel the driver of the pick-up that struck the parked car. I got McDaniel's information and noticed the smell of intoxicants. I asked if he had been drinking and he stated yes, 1 or 2 earlier. I then had McDaniel perform field sobriety tests and he did poorly on tests given. I then placed him under arrest for driving while intoxicated. I then transported him to the Police Dept. where I read him implied consent. McDaniel agreed to take the Breathalyzer test. McDaniel checked a .189% BAC so he was then charged with DWI....

The officer recorded his time of arrival at the accident as 5:09 p.m. and recorded the time of the accident as 5:05 p.m. which, we must assume, was an estimate.[4] The record shows the officer asked Driver to perform three sobriety tests: the "walk-and-turn" test, the "one leg stand" test and the "gaze nystag-

mus" test. On the "walk and turn" test, the officer marked that Driver started before the instructions were finished, stopped while walking to steady himself, did not touch heel to toe as he walked, lost balance while walking, used his arms for balance, and lost his balance while turning. As to the "one leg stand" test, the officer marked that Driver swayed both while balancing on his left leg and his right leg and, further, that he used his arms for balance on each leg. On the "gaze nystagmus" test the officer marked that there was no smooth pursuit, a distinct nystagmus at "maximum deviation," and "onset before 45% with some white showing" for both of Driver's eyes. Under "observation" the officer marked that Driver's eyes were watery and bloodshot, that his pupils were dilated, and that his speech was slurred. As part of the uniform accident report the arresting officer typed "Driver of V1 [Driver's vehicle] stated he was turning ... and was getting himself a piece of pizza at the same time and then [struck] V2 [parked car]." The officer further filled-in the name "McDaniel[,] Mitchell Lynn" in the space denoted "Driver's Full Name" under "Driver 1."

In its judgment, the trial court cited *Leach v. Director of Revenue*, 705 S.W.2d 125 (Mo. App.1986), as creating a requirement that the Director present "live witnesses" when a "contest as to the factual basis for arrest" is injected by Driver. *Id.* at 127. We determine, however, that the trial court's reading of *Leach* is incorrect.

■ In *Leach*, the trial court was faced with a copy of the arresting officer's report that did not bear "a legible notarial seal." *Id.* at 126. Because of this infirmity, the

---

not signed and sworn in front of the notary as attested by the notary's signature. *See Herrero v. Cummins Mid-America, Inc.*, 930 S.W.2d 18, 22 (Mo.App.1996)(the rationale for notarization is to avoid the risk that the signature will not be authentic). The trial court had previously noted that although the arresting officer's report was dated June 7, 1997, the notary attested that the arresting officer had "subscribed the report and swore to its truth and correctness in her presence on the 18th day of June [1997]"; the trial court determined that a presumption of truthfulness attached to the notary's declaration. We agree. We also determine that the arresting offi-

cer properly complied with the provisions of section 302.510 in filing his verified report.

4. In light of the evidence that the officer responded to a dispatch, we find that the exact timing of the accident is of no moment. "There is nothing in the statutes or case law requiring Director to prove the time of an accident." *Haas v. Director of Revenue*, 975 S.W.2d 483, 485 (Mo. App.1998). Further, there was no evidence presented that Driver consumed any alcohol subsequent to the accident.

trial court did not allow the arresting officer to testify, did not allow any other evidence to be admitted by the Director, summarily ruled in favor of the petitioner, and ordered his license restored. *Id.* In reversing the trial court, the Western District of this Court held that it was error for the trial court to refuse to allow the arresting officer to testify. *Id.* at 126–27. The Court concluded by stating that the [verified] "report may not be used ... to preclude the state from presenting evidence from the primary source, the testimony of the arresting officer." *Id.* at 127.[5] Contrary to the trial court's recitals in its judgment in the case at bar, at a trial *de novo*, as permitted by section 302.535, there is no requirement that the Director produce live witnesses. *See Helton v. Director of Revenue*, 944 S.W.2d 306, 310 (Mo.App.1997); *Tebow*, 921 S.W.2d at 113 (*Helton* and *Tebow* were decided by the Western District of this Court subsequent to the *Leach* opinion and respectively authorized the suspension of a driver's license on the basis of evidence presented by records alone, upon compliance with the provisions of section 302.505); *see also Thebeau v. Director of Revenue*, 945 S.W.2d 674, 675–76 (Mo.App.1997); *Cannon v. Director of Revenue*, 895 S.W.2d 302, 305–06 (Mo.App.1995).

■ Here, with the exception of an objection relating to the notarization of the arresting officer's verified report, Driver made no objection to the sufficiency of the information contained within the custodian's affidavit. Additionally, as in *Tebow*, the Director laid a sufficient foundation by submitting the affidavit of the custodian of the records of the Drivers License Bureau of the Department of Revenue. *See Tebow*, 921 S.W.2d at 113.[6] The custodian's "affidavit complied with the form and content of the form set out in § 490.692." *Id.* When Department of Revenue records are admitted as business records in a section 302.535 *de novo* hearing, such records may create a *prima facie* case, even when the officer who made the arrest and conducted the breath test was not present at trial. *See Helton*, 944 S.W.2d at 310. Further, "it is a well–established rule that when evidence is admissible under any recognized exception to the hearsay rule, an objection based on the lack of an opportunity to confront or cross-examine is not valid." *Cannon*, 895 S.W.2d at 305; *see Hensley v. Director of Revenue*, 884 S.W.2d 419, 420 (Mo.App.1994); *Thebeau*, 945 S.W.2d at 675–76.[7]

■ In the case before us, Driver presented no evidence and refused to testify,

5. *See Young v. Director of Revenue*, 835 S.W.2d 332, 335 (Mo.App.1992)(a court that favors the form or content of the official reports over witness testimony on the trial de novo so as to preclude evidence from the arresting officer ... invites error); *Lawrence v. Director of Revenue*, 863 S.W.2d 10, 12 (Mo.App.1993); *see also Brussel v. Director of Revenue*, 962 S.W.2d 454, 457 (Mo.App.1998).

6. Section 490.680, RSMo 1994 provides that:

A record of an act, condition or event, shall insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Here, *inter alia*, the affidavit of the custodian of records for the Missouri Department of Revenue, Driver's License Bureau, dated February 23, 1998, showed that the records in question were kept by the Driver's License Bureau "in the regular course of business" and that the "record[s] [were] made at or near the time of the act,

event[,] condition, opinion or diagnosis" by a "representative of said Department" with "knowledge of the act, event, condition, or diagnosis...." The custodian further certified, pursuant to section 302.312, that the records attached were "exact duplicates of the original records lawfully filed or deposited with the Department of Revenue, by the reporting agency or entity, pursuant to the provisions of Chapter 302, 303 and/or 577, RSMo."

7. However, it is important to note that submitting a case on records alone, though not prohibited, is not without risk. "[B]y relying solely on the records themselves Director would be unable to explain any discrepancies that may exist within them." *Cannon*, 895 S.W.2d at 306. Additionally, a document must still be relevant to an issue in the case before it may be received into evidence, and the admissibility of business records remains a discretionary determination of the trustworthiness of the records. *Id.* Lastly, "Director retains the initial burden of proof to support the license suspension when the cause is tried de novo before the circuit court [and] ... if the court finds that one of the requisite elements has not been proven by the records themselves, Director has failed to meet her burden and the suspension will be reversed." *Id.*

leaving the Director's evidence uncontradicted. Also, Driver had equal opportunity to subpoena the arresting officer and compel his testimony or present evidence of his own to contradict the information contained within the records. *Cannon,* 895 S.W.2d at 305–06. However, he did not do so. Additionally, it was undisputed that Driver's breath analysis test indicated his blood alcohol content was .189%. Furthermore, the evidence shows that the officer had probable cause to believe that Driver was intoxicated at the time he was operating a motor vehicle. It is not "necessary for an officer to actually observe a person driving in order to have probable cause to arrest for driving while intoxicated." *Rogers v. Director of Revenue,* 947 S.W.2d 475, 477 (Mo.App.1997). As previously set out, the arresting officer noted that Driver failed three sobriety tests at the scene of the accident he was investigating. Additionally, Driver's eyes were watery and bloodshot, his pupils were dilated, and his speech was slurred. Furthermore, the arresting officer's report presented facts showing that Driver was driving the vehicle in question. The arresting officer wrote in the uniform accident report that "Driver of V1 [Driver's vehicle] stated he was turning ... and was getting himself a piece of pizza at the same time and then [struck] V2 [parked car]." This statement was not contradicted by Driver and clearly is an admission that he was driving. *See Pappin v. Director of Revenue,* 958 S.W.2d 591, 592 (Mo.App.1998).

"Deference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict." *Fischer v. Director of Revenue,* 928 S.W.2d 424, 425–26 (Mo.App.1996). The evidence established that Driver was arrested upon probable cause that he was driving in violation of an alcohol related offense and that he had been driving at a time when his blood concentration was at least .10 percent by weight. *See Thebeau,* 945 S.W.2d at 676; *Kienzle,* 944 S.W.2d at 328; *Helton,* 944 S.W.2d at 310. Under the facts of this case, the trial court erred as a matter of law in determining that the Director failed to prove her case in the absence of the testimony of the arresting officer. Its judgment is not supported by the evidence and is against the weight of the evidence.

The judgment of the trial court is reversed. The case is remanded to the trial court with directions to enter a judgment reinstating the suspension of Driver's driving privileges.

GARRISON, C.J., and SHRUM, P.J., concur.